UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EPICE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:07CV206 HEA |
| v. | ) |
| | ) |
| THE LAND REUTILIZATION | ) |
| AUTHORITY OF THE CITY OF ST. | ) |
| LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

### OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss, [Doc. Nos. 47 and 49]. Plaintiff opposes both motions. For the reasons set forth below, the motions are denied.

### Introduction

Plaintiff filed this action on January 25, 2007. The Third Amended Complaint sets forth that it is brought, *inter alia*, under the provisions of 42 U.S.C. §§ 1983 and 1988 for an alleged deprivation of Plaintiff's Fourteenth Amendment rights. Plaintiff contends that it was denied due process and equal protection through the actions taken by Defendants in the condemnation and foreclosure of property located at 5900 West Florissant, St. Louis, Missouri. Plaintiff also contends that the actions taken by Defendants violated the statutory requirements of

Sections 67.400 to 67.450 and Sections 141.930 to 141.940 of the Revised Statutes of Missouri. Defendants move to dismiss.

## Facts and Background[1]

Plaintiff alleges that it is a Nevada corporation with its principal place of business in Culver City, California. The Complaint sets forth that C.W. Turner Corporation executed a Deed of Trust in favor of Plaintiff to create a security interest in a piece of real property, 5900 West Florissant, St. Louis, Missouri, to secure indebtedness in the amount of $175,000.00. The Deed of Trust, dated October 10, 2002, was recorded in the St. Louis Land Records on October 23, 2002.

The Complaint alleges that Defendant City of St. Louis demolished a fence located on the Property as having been declared a nuisance on or about May 8, 2003. Thereafter, the City issued a special tax bill for demolition and other costs that purportedly encumbered the property. On or about December 19, 2003, Defendant Leggett, as Collector of Revenue of the City of St. Louis, obtained a Decree of Foreclosure and special tax lien against the property in the principal amount of $200.00 (for the cost of the demolition), and totaling $454.35 with the

---

[1] This rendition of the facts is set forth for the purposes of these motions only and in no way relieves the parties of necessary proof thereof in later proceedings.

addition of certain costs. On or about September 17, 2004, Defendant Leggett filed an Affidavit of Service stating that a Notice of Judgment of Foreclosure of Tax Liens, Public Sale of Real Estate and Right of Redemption was mailed via United States Mail, postage prepaid, to Plaintiff. Plaintiff claims to have never received the notice. Defendant Murphy, Sheriff of the City, sold the property at a Sheriff's sale on or about October 19, 2004. Defendant Land Reutilization Authority ("LRA") of the City of St. Louis actively bid and a Sheriff's Deed was issued by Defendant Murphy to the LRA.

Count I of the Complaint alleges, pursuant to 42 U.S.C. §§ 1983 and 1988, that Plaintiff was deprived of equal protection and due process in violation of the United States Constitution. Plaintiff alleges that it was damaged through the loss of its security interest in the property. It also seeks a declaration that the Sheriff's Deed is null and void, or alternatively, that the failure to give notice of Plaintiff's redemption rights results in Plaintiff's interest in the property not being affected by the tax sale, and that the lien of the Deed of Trust held by Plaintiff was not extinguished by the tax sale.[2]

Count II of the Complaint is a state action for wrongful demolition, and

---

[2] Alternatively, Plaintiff seeks judgment in the amount of the $105,001.70 and interest for the value of its security interest lost through the tax sale.

- 3 -

failure to provide constitutionally adequate notice thereof, of a fence under Sections 67.400 to 67.450 of the Revised Statutes of Missouri 2007.[3]  Count III is a state law claim for declaratory relief and to quiet title.

## Discussion

Defendants move to dismiss on the following grounds: Sections 67.400 to 67.450 and Sections 141.930 to 141.940 are inapplicable; a security interest holder has no constitutionally cognizable right to notice of municipal code violations, particularly abatement of public nuisances; and Plaintiff admits it received the constitutionally required notice of the pending tax sale.  Each of these will be discussed as they pertain to Counts I and II of the Complaint.

**Count I**

Applicability of Chapter 141

Plaintiff alleges that the City's actions in the execution and confirmation of the tax sale violated Chapter 141.  Specifically, Defendants executed the sale of the Property on October 19, 2004: (1) before expiration of two years from the date of judgment of foreclosure (December 19, 2003), in violation of Section 141.930;[4] and

---

[3] All statutory references, referred to as both Chapter and Section, are to RSMo 2007.

[4] Section 141.930 provides:

> After judgment shall have been rendered, no execution shall be levied thereon nor sale under said execution had for a period of two years from the date of entry of such

(2) for less than fifty percent of the value of the Property, in violation of Section 141.940.[5] Defendants, on the other hand, argue that the provisions of Chapter 92 govern the sale, and therefore, cannot be found to have violated either Section 141.930 or 141.940 when said Sections do not apply to them.

---

judgment, during which time the owner of the property against which judgment has been rendered, or any person having an interest therein, may redeem the property from said judgment by paying the amount of the judgment, interest and costs, or the amount set as a compromise payment under the terms of this law, and if such payment be made, the judgment shall be released and the taxes marked paid.

[5] Section 141.940 provides:

1. Whenever a sale under execution on a tax judgment shall be had, the sheriff shall announce that such sale is subject to the approval of the court, and the sheriff shall report the sale and the amount of the bid to the court in which judgment was rendered, and the court shall appoint two disinterested and competent appraisers, who shall appraise the value of the property and the improvements thereon.

2. If the amount bid by the purchaser at the execution sale shall exceed fifty percent of the value of the property, the court shall confirm the sale, and the sheriff shall execute a deed for the property.

3. If the amount bid by the purchaser is less than fifty percent of the appraised value of the property, and the title which would be acquired by the purchaser is subject to other taxes, which are a lien superior to the lien of the taxes for which the judgment was rendered, and the combined amount of such prior liens and the amount bid by the purchaser shall exceed fifty percent of the appraised value of the property, the court shall likewise confirm the sale, and the sheriff shall execute a deed to the purchaser.

4. If the amount bid, together with prior tax liens, if any, shall be less than fifty percent of the appraised value of the property, the court may require the purchaser to increase his bid to an amount equal to fifty percent of such appraised value, and if the purchaser agrees so to do, and makes such additional payment, the sale shall be approved, and the sheriff shall execute and deliver a deed to the purchaser, but if the purchaser declines to increase his bid and make such additional payment, the sale shall be disapproved and the lien of the judgment continued, subject to the issuance of subsequent executions.

The provisions contained in Sections 92.700 to 92.920, "The Municipal Land Reutilization Law (St. Louis City)" ("MLRL"), provide direction for determining when to apply the general law of taxation, as found in Chapters 140 and 141. Specifically, Section 92.870 provides in part that:

> The general law relating to taxation and the collection of delinquent taxes as now existing . . . shall apply to cities not within any county and which now have or may hereafter have a population in excess of five hundred thousand *insofar as not inconsistent with the provisions of sections 92.700 to 92.920.* (emphasis added).

Thus, if a Chapter 141 provision is inconsistent with a provision of the MLRL, the latter trumps the former. As applied in the present case, it becomes clear that the MLRL governs.

Under Section 141.930, a tax sale cannot be executed until two years after the judgment of foreclosure. Contrary to Plaintiff's argument that the two-year waiting period merely enhances the seven month period of Section 92.810,[6] the Court finds

---

[6] Under section 92.810, the sheriff must wait six months after the foreclosure before posting any advertisement of the sale. After the six months have elapsed, the sheriff may then post the advertisement and wait an additional thirty days prior to conducting the sale, resulting in a total waiting period of seven months. Section 92.810, in its entirety, provides:

> 1. After the judgment of foreclosure has been entered, or, after a motion for a new trial has been overruled, or, if an appeal be taken from such judgment and the judgment has been affirmed, after the sheriff shall have been notified by any party to the suit that such judgment has been affirmed on appeal and that the mandate of the appellate court is on file with the circuit clerk, there shall be a waiting period of six months before any advertisement of sheriff's sale shall be published.

the two statutes to be inconsistent. The two-year waiting period found in Section 141.930 was enacted prior to Section 92.810 of the MLRL. If Section 141.930 "merely enhances" 92.810, then the waiting period would always be two-years,

---

2. If any such parcel of real estate be not redeemed, or if no written contract providing for redemption be made within six months after the date of the judgment of foreclosure, if no motion for rehearing be filed, and, if filed, within six months after such motion may have been overruled, or, if an appeal be taken from such judgment and the judgment be affirmed, within six months after the sheriff shall have been notified by any party to the suit that such judgment has been affirmed on appeal and that the mandate of the appellate court is on file with the circuit clerk, the sheriff shall, after giving the notice required by subsection 3 of this section, commence to advertise the real estate described in the judgment and shall fix the date of sale within thirty days after the date of the first publication of the notice of sheriff's sale as herein provided, and shall at such sale proceed to sell the real estate.

3. No later than twenty days prior to the sheriff's sale, the sheriff shall send notice of the sale to the owner or owners, as disclosed upon the records of the assessor of the real estate for which tax bills thereon are delinquent. The search of the records of the assessor must be made not more than forty days prior to the sending of this notice. The notice shall provide the date, time and place of the sale. The notice shall also state that the property owner may avoid the sale by redeeming such parcel of real estate prior to the sale as specified in section 92.750 or by entering into an agreement with the collector to pay the taxes included in the foreclosure suit under section 92.740. The notice required by this subsection shall be mailed in an envelope with postage prepaid. The cost of the title search, mailing and notice as required by this subsection shall be included as costs at the sale of the real estate.

4. Notwithstanding the provisions of this section to the contrary, any residential property which has not been redeemed by the end of the waiting period required by this section which has been determined to be of substandard quality or condition under the standards established by the residential renovation loan commission pursuant to sections 67.970 to 67.983, RSMo, may, upon the request of the residential renovation loan commission, be transferred to the residential renovation loan commission for the purpose of renovation of the property. Any such property transferred pursuant to this subsection shall be renovated and sold by the residential renovation loan commission in the manner prescribed in sections 67.970 to 67.983, RSMo. The residential renovation loan commission shall reimburse the land reutilization authority for all expenses directly incurred in relation to such property under sections 92.700 to 92.920 prior to the transfer.

making the later enacted seven-month period in Section 92.810 a pointless legislative exercise. In other words, the seven-month waiting period would have no purpose or effect if it were enhanced by the two-year waiting period. Likewise, using this same rationale, it is clear that the fifty percent of value bid requirement in Section 141.940 is inconsistent with the adequate consideration requirement in Section 92.840.[7]

Because Sections 141.930 and 141.940 are inconsistent with Sections 92.810 and 92.840 of MLRL, the Sheriff's sale of the Property to the LRA is governed by the MLRL. *See Euclid Plaza Assoc. v. African Am. Law Firm*, 55 S.W.3d 446 (Mo. App. E.D. 2001) (applying applicable provisions of the MLRL to a sale conducted by the Collector of Revenue for the City of St. Louis). Any reference to the provisions found in Chapter 141 shall therefore be stricken from Plaintiff's Complaint.

---

[7] Section 92.840.1 provides:

After the sheriff sells any parcel of real estate, the court shall, upon its own motion or upon motion of any interested party, set the cause down for hearing to confirm the foreclosure sale of the real estate, even though such parcels are not all of the parcels of real estate described in the notice of sheriff's foreclosure sale. Notice of the hearing shall be sent by any interested party, or the court, moving to confirm the foreclosure sale, to each person who received notice of sale as specified in subsection 3 of section 92.810. At the time of such hearing, the sheriff shall make report of the sale, and the court shall hear evidence of the value of the property offered on behalf of any interested party to the suit, and shall immediately determine whether an *adequate consideration* has been paid for each such parcel. (emphasis added).

Due Process

Plaintiff further alleges in Count I that its due process and equal protection rights were violated because Defendants failed to provide it with adequate notice of the actions taken with respect to the real property. Plaintiff's allegations of the inadequacy of notice can essentially be broken down into two issues: (1) failure of notice[8] regarding the judgment of foreclosure and tax sale of the real property resulting in the expiration of Plaintiff's right of redemption contained in Section 92.750; and (2) failure of notice regarding the condemnation of the fence and assessment of the special tax bill.[9]

The Due Process Clause of the Fourteenth Amendment requires that, prior to taking action affecting an interest in property, a state provide notice that is reasonably calculated, under the circumstances, to apprise interested parties of the pendency of that action. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798, (1983) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314,

---

[8] Plaintiff also alleges inadequacy of notice, namely if the notice was sent by Defendant, it was returned to Defendant and that Defendant took no further steps to attempt to provide Plaintiff with actual notice.

[9] Plaintiff seeks a declaratory judgment that the exemption of Defendant City of St. Louis contained in section 67.410.3 from providing the notice of condemnation and of the special tax bill violates the Due Process and Equal Protection Clauses of the United States Constitution, and that such exemption is null and void and of no effect. Because 67.410.1(3) requires notice to mortgagees of nuisance declarations in most parts of Missouri but not in St. Louis, Plaintiff alleges it violates the Equal Protection Clause.

70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).  In *Mennonite*, the Court stated:

> [A] mortgagee possesses a substantial property interest that is significantly affected by a tax sale. . . . The tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all creditors. Ultimately, the tax sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances at the conclusion of the redemption period.
>
> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. *Cf. Wiswall v. Sampson*, 55 U.S. 52, 67, 14 L.Ed. 322 (1852).

*Mennonite*, 462 U.S. at 798.

Defendants do not dispute that the Plaintiff was entitled to notice of the threatened sale of the property, which would terminate its right of redemption, and thus its financial interest in the property.  Defendants argue, then, that Plaintiff alleges and admits in the Complaint that notice was sent by Defendant Leggett to Plaintiff regarding the pending sale.  The Court finds no such admittance in the Complaint.  Plaintiff has merely alleged that *Defendant's Affidavit*, not the Plaintiff itself, stated that notice was mailed to Plaintiff's trustee.  Nowhere in the Complaint does Plaintiff actually say notice was mailed to Plaintiff.

Secondly, Defendants argue that Plaintiff, as mortgagee of the Property, is not entitled to notice of nuisance violations and assessments of special tax bills.  Specifically, Plaintiff suffers no liability for the improper maintenance of the

property, and thus, Defendants argue, Plaintiff can suffer no pecuniary loss or injury for the nuisance violation. While Defendants' argument is not without merit, at this stage in the proceeding, the Court is not prepared to broadly hold that a mortgagee is never entitled to notice of condemnation or assessment of special taxes. *See Mullane*, 339 U.S. at 314 (adequacy of notice is to be determined "under all the circumstances"). If the condemnation and tax bills "immediately and drastically" diminished the value of the security interest, as alleged by the Plaintiff, then notice was required under the Fourteenth Amendment.

**Count II**

Defendant City of St. Louis argues that Count II of Plaintiff's Third Amended Complaint should be dismissed because, as a city constitutionally chartered under Article VI, Section 31 of the Missouri Constitution, Defendant City St. Louis has no duty to abide by the provisions of Sections 67.400 through 67.450.[10]

A reading of these sections, however, reveals that the provisions for enactment of orders or ordinances for the abatement of a public nuisance apply to

---

[10] Defendants LRA, Murphy, and Legget also argue that Sections 67.400 to 67.450 do not apply to them. However, Count II is brought against only Defendant City of St. Louis. Thus, dismissal of Count II against LRA, Murphy, and Legget is not necessary.

"any city," without exclusion of constitutionally chartered cities.[11]  Furthermore, the requirements for the enactment of these orders or ordinances periodically refer to cities not within a county, likely a direct reference to the City of St. Louis. Specifically, subsection 3 of Section 67.410 exempts "[t]he governing body of any city not within a county" from the notice requirements[12] of subsections 1 and 2 of Section 67.410.  These provisions apply to Defendant City of St. Louis.

In the event that a building or structure is wrongfully demolished, Section 67.450 holds that political subdivision liable for the resulting damages.  In the present case, if the fence was wrongfully demolished, as alleged by Plaintiff, Defendant City of St. Louis may be held liable under Section 67.450.

## Conclusion

Based upon the foregoing, the Court finds that Plaintiff has sufficiently stated a claim upon which relief can be granted.  As such, the Motions to Dismiss are **not**

---

[11] Section 67.400 provides:

> The governing body of *any city*, town, village, or county of the first classification and any county of the first class with a charter form of government may enact orders or ordinances to provide for vacation and the mandatory demolition of buildings and structures or mandatory repair and maintenance of buildings or structures within the corporate limits of the city, town, village or county which are detrimental to the health, safety or welfare of the residents and declared to be a public nuisance. (emphasis added).

[12] The exemption of Defendant City of St. Louis from the notice requirements is the basis for Plaintiff's argument that said exemption violates the Equal Protection Clause of the United States Constitution.

well taken.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, [Doc. Nos. 47 and 49], are **DENIED**.

Dated this 24th day April, 2008.

                                                HENRY EDWARD AUTREY
                                          UNITED STATES DISTRICT JUDGE