IN THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF MISSOURI

EPICE CORPORATION,               )
a Nevada corporation,            )
                                 )
      Plaintiff,             )
                                 )
v.                               )        Case No. 4:07CV00206 HEA
                                 )
THE LAND REUTILIZATION           )
AUTHORITY OF THE CITY OF ST.     )
LOUIS, MISSOURI, et al.,         )
                                 )
      Defendants.            )

## SECOND TRIAL BRIEF

COMES NOW Plaintiff, by and through its attorney, and for its Trial Brief, states:

## INTRODUCTION

Plaintiff anticipates the following legal issues may arise at trial:

## I.

## THE WEED CONTROL ORDINANCE DID NOT AUTHORIZE THE ISSUANCE OF THE SPECIAL TAX BILL ON OCTOBER 8, 2002, WITHOUT WAITING AT LEAST 90 DAYS AFTER THE ABATEMENT BILL WAS ISSUED AND WITHOUT AN ACCOUNTING OF THE ACTUAL COSTS CERTIFIED FOR COLLECTION BY SPECIAL TAX BILL, AND THE ISSUANCE OF SAID SPECIAL TAX BILL VIOLATED PLAINTIFF'S SUBSTANTITVE DUE PROCESS RIGHTS.

The Weed Control Ordinances require the City to record various types of information relating to abatement, including, without limitation, the date and location of the abatement, condition abated, equipment, material and personnel used, the length of use of personnel and equipment, quantity of material used, and such other data as is appropriate to document the actual cost of the abatement, including clerical costs, and the method and dates of service of notice. Plaintiff's Hayes Deposition Exhibit 2.

The certification of costs for the Special Tax Bill by the Forestry Commissioner did not in fact certify the actual costs to the City in purportedly performing the abatement work claimed, but, in fact, certified a set charge of $200 assigned to all "light debris" bills. Deposition of Greg Hayes, at 22.

Section 11.04.110 of the City Code, as enacted by Ordinance No. 64164, provides:

> A.     The Forestry Commissioner shall bill the owners of any property on which the City abates a nuisance under this chapter for the cost of such abatement. Any such bill for the abatement of a nuisance under the provisions of Section 11.04.080 which is unpaid ninety (90) days after it is mailed may be referred to the City Counselor or to a collection agency for collection and shall bear interest at the highest rated allowed by law. Any such bill for the abatement of a nuisance under the provisions of Section 11.04.080 which the Forestry Commissioner has been unable to collect shall be certified to the comptroller who shall notify the collector of revenue. The collector of revenue shall include the certified cost in the annual real estate tax bill for the property and the certified cost shall be collected in the same manner and procedure for collecting real estate taxes. If the certified cost is not paid, the tax bill shall be considered delinquent, and the collection of the delinquent bill shall be governed by the laws governing delinquent and back taxes. The tax bill from the date of its issuance shall be deemed a personal debt against the owner and shall be a lien on the property until paid.

Based upon the foregoing, Plaintiff concludes that the City was without authority to issue a special tax bill against the Property under the Weed Control Ordinance, because the special tax bill was not based upon actual costs but some arbitrary amount set by the Department of Parks, Recreation & Forestry. Further, according to the City the Forestry Commissioner's bill was dated July 17, 2002, and less than 90 days thereafter on September 27, 2002, the costs of the light debris removal was certified, and the special

tax bill was issued on October 8, 2002, less than 90 days after July 17, 2002. This special tax bill was not authorized by law.

Epice Corporation has the constitutional right to be free from deprivations of its property by the arbitrary exercise of the powers of government. *Christopher Lake Development Company v. St. Louis County,* 35 F.3d 1269, 1274-1275 (8th Cir. 1994) (recognizing a substantive due process claim for land use regulations that are arbitrary, irrational and not substantively related to a legitimate governmental purpose). *See also Albright v. Oliver,* 510 U.S. 266, 272 (1994) (the Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights; the words, "by the law of the land" from the Magna Carta were intended to secure the individual from the arbitrary exercise of the powers of government). As stated in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998):

Since the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action:

"The principal and true meaning of the phrase has never been more tersely or accurately stated than by Mr. Justice Johnson, *Bank of Columbia v. Okely*, 17 U.S. 235, 4 Wheat. 235-244, 4 L.Ed. 559 [(1819)]: "As to the words from Magna Charta, incorporated into the Constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at last settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct., at 117 (1884).

We have emphasized time and again that " [t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), whether the fault lies in a denial of fundamental procedural fairness, see, e.g., *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, see, e.g., *Daniels v. Williams*, 474 U.S., at 331, 106 S.Ct., at 664 (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised).

3

The Forestry Commissioner acted arbitrarily in certifying the abatement bill of $200 on September 27, 2002 in violation of the provisions of the Weed Control Ordinance and in violation of the substantive due process rights of Epice under the Fourteenth Amendment to the United States Constitution.

## II.

**EPICE, AS A MORTGAGEE, HAS A RIGHT TO PRIOR NOTICE AND A HEARING UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BEFORE THE CITY COULD LAWFULLY ENCUMBER THE PROPERTY WITH A LIEN SUPERIOR TO THE DEED OF TRUST HELD BY EPICE THAT CAN BE USED AS THE BASIS FOR A COMPLETE NULLIFICATION OF EPICE'S INTEREST IN THE PROPERTY. BY CERTIFYING THE ABATEMENT COSTS FOR A SPECIAL TAX BILL WITHOUT ATTEMPTING TO COLLECT THE BILL FOR AT LEAST 90 DAYS IN VIOLATION OF THE WEED CONTROL ORDINANCE (DURING WHICH TIME EPICE ACQUIRED AN INTEREST IN THE PROPERTY AS A MORTGAGEE), THE CITY DEPRIVED EPICE OF ITS PROCEDURAL DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS EPICE WOULD HAVE HAD THE CONSTITUTIONAL RIGHT TO PRIOR NOTICE AND A HEARING OF THE IMPOSITION OF SAID SPECIAL TAX BILL IF THE WEED CONTROL ORDINANCE HAD BEEN FOLLOWED WITH RESPECT TO THE PROVISION REQUIRING COLLECTION EFFORTS FOR AT LEAST 90 DAYS PRIOR TO CERTIFICATION FOR A SPECIAL TAX BILL.**

In *Luedeke v. Village of New Paltz,* 63 F.Supp.2d 215 (N.D.N.Y. 1999), the Court considered the constitutionality of a snow removal ordinance that required an owner or occupant of real property abutting any sidewalk to keep the sidewalk free and clear of snow and ice at all times. 63 F.Supp.2d at 218. Under said snow removal ordinance, property owners were required to remove snow and ice within twenty-four hours after cessation of every fall of snow or formation of ice on the sidewalk abutting the premises. 63 F.Supp.2d at 218. The snow removal ordinance provided that if such snow or ice was not removed within said twenty-four hour period, the Village could remove the snow and ice and send the owner of the abutting premises a statement or fine, and if the charge was

not paid, it would be a lien on the premises abutting said sidewalk and collected as an assessment. 63 F.Supp.2d at 218.

The property owner in *Luedeke* attempted to show the code enforcement officer a copy of his survey showing that the boundary of his property ended several feet East of the sidewalk. 63 F.Supp.2d at 219. The Court stated:

> The first steps in any case involving due process are to ascertain (1) whether the plaintiff has a property interest, and (2) whether there has been a deprivation thereof. … [Citations omitted.] There is little doubt, and the parties do not dispute, that plaintiff has a property interest in his house and surrounding property. … [Citation omitted.] Placing a lien upon one's property "is not a negligible deprivation." *West v. Zurhorst,* 425 F.2d 919, 920 (2d Cir. 1970); *see also Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991) ("[E]ven the temporary or partial impairments to property rights that attachments, liens and similar encumbrances entail are sufficient to merit due process protection."). Having found that plaintiff was deprived of a property interest, the next question is whether he was afforded due process of law.

> The general rule is that the due process of law demands prior notice and hearing. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 500, 126 L.Ed.2d 490 (1993) ("Good"). "We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 501 (internal quotations omitted). In determining what process is due, courts often balance the importance of the private interest and the length and finality of the deprivation, the likelihood of governmental error and the probable value of additional safeguards, and the magnitude of the governmental interests involved. … [Citations omitted.]

63 F.Supp.2d at 220-221. Below you should find an application of this analysis.

**Step (1): Did Epice Have a Property Interest? Answer: Yes:** In *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court applied the principles of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) to tax sale proceedings as follows:

**[A] mortgagee possesses a substantial property interest that is significantly affected by a tax sale.** Under Indiana law, a mortgagee acquires a lien on the owner's property which may be conveyed together with the mortgagor's personal obligation to repay the debt secured by the mortgage. Ind.Code § 32-8-11-7. A mortgagee's security interest

generally has priority over subsequent claims or liens attaching to the property, and a purchase money mortgage takes precedence over virtually all other claims or liens including those which antedate the execution of the mortgage. Ind.Code § 32-8-11-4. **The tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors**. Ultimately, the tax sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances at the conclusion of the redemption period.

Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. *Wiswall v. Sampson*, 55 U.S. 52, 67, 14 L.Ed. 322 (1852). When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service.

*Id*. at 798 (emphasis added).

The Supreme Court of Missouri in *Lohr v. Cobur Corp.*, 654 S.W.2d 833 (Mo. banc 1983), has applied *Mennonite Board of Missions* to tax sale proceedings in Missouri. *Id.* at 886. The *Mennonite* case has been held to apply to proceedings under the Municipal Land Reutilization Law applicable to the City. *In the Matter of Foreclosure of Liens for Delinquent Land Taxes*, 226 S.W.3d 250 (Mo. App., E.D. 2007).

In this case, there is no question that Epice, as a mortgagee, had a property interest in the Property protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Step (2): Did Epice Suffer a Deprivation of its Property Interest? Answer: Yes:** In *Walker v. City of Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), the Court found that *Mullane* applies to partial condemnation proceedings to determine compensation from a partial taking of property, and in *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), the Court found that *Mullane* applies to partial condemnation proceedings resulting from the diversion of a river upstream from the land owner's property.

In this case, the City conducted condemnation proceedings to declare the Fence a nuisance (¶ 22 of Exhibit A), or, alternatively, the City declared the Property to be a nuisance as a result of "light debris" (¶ 8 of Exhibit A).  For purposes of this Motion for Partial Summary Judgment, there is no distinction being drawn in this respect.  The end result of these proceedings was the creation of a $200 special tax bill with lien priority over Epice's Deed of Trust that eventually led to the complete loss and nullification of Epice's interest in the Property.  At no time was Epice given notice of creation or existence of this special tax bill.

There are circumstances when the assessment of a special tax lien with priority over a mortgagee's interest does not create the drastic diminution of value, or deprivation of property rights, triggering the requirement of mailed notice to a mortgagee under the *Mennonite* case.  This case is not one of those circumstances.  In *Federal Deposit Ins. Corp. v. City of New Iberia,* 921 F.2d 610 (5th Cir. 1991) and *Zipperer v. City of Fort Meyers,* 41 F.3d 619 (11th Cir. 1995), courts found that the assessment of special tax liens with priority over the interest of a mortgagee did not require advance mailed notice.

The facts in this case are dissimilar to the *New Iberia* and *Zipperer* cases, because Epice's entire interest as a mortgagee was completely nullified by the unauthorized certification of abatement costs for a special tax bill that lead to the foreclosure of the special tax bill and the nullification of Epice's interest in the Property, whereas in *New Iberia* and *Zipperer,* the government did not actively foreclose the special tax lien but waited passively until someone paid the bill.  Even in *Zipperer v. City of Fort Meyers,* 41 F.3d 619, 624 (11th Cir. 1995), the Court acknowledged that *Mennonite* applies to the

assessment of a special tax bill that is the basis for a complete nullification of a property

interest.  The court in *Zipperer* stated:

> We agree that had there been a tax sale of the mortgaged property which nullified Zipperer's entire interest as mortgagee, Zipperer's interest would have been as "immediately and drastically diminished" as the mortgagee's interest in *Mennonite*. It is uncontroverted, however, that Zipperer, as the present landowner, will retain a significant interest in the land even after its subordination to the special assessment. Therefore, the imposition of the special assessments and their lien prioritization do not immediately and drastically diminish his interests in a manner that would implicate a *Mennonite* due process deprivation.

*Id.* at 624.  *See also City of Panama City v. Head,* 797 So.2d 1265 (Fla. App. 2001).  In

this case, the nuisance condemnation proceedings conducted by the City resulted in the

assessment of the special tax bill that was eventually foreclosed and completely nullified

Epice's interest in the Property, thereby depriving Epice of its interest in the Property.

If the City wishes to foreclose a special tax bill for abatement costs and

completely nullify a private interest in the Property, then due process requires:  (A) strict

compliance with the applicable city ordinances in creating the special tax bill to assure

that persons are not deprived of their property through arbitrary actions of the state, and

(B) prior notice of these condemnation proceedings and/or of the certification of costs for

a special tax bill to allow mortgagees to protect their interest in property from deprivation

and complete nullification by the government.  In this case, if the Forestry Commissioner

had attempted to collect the abatement bill for at least 90 days, as is required by the Weed

Control Ordinance, Epice's interest in the Property as a mortgagee would have entitled

Epice to such notice under the Due Process Clause of the United States Constitution.  The

Forestry Commissioner's arbitrary action in certifying costs before he was authorized to

do so should not deprive Epice of its due process rights.

**Balancing of Factors in Determining What Process is Due—Did Imposition of a Lien Substantially Interfere with Property Rights?  Answer:  Yes:**  The Court in the *Luedeke* case noted that an owner has a substantial interest in retaining ownership of his residence and surrounding property free and clear of encumbrances.  A lien on the property could substantially interfere with ownership rights, such as the ability to freely transfer title.

Likewise, a mortgagee has a substantial interest in retaining ownership of its deed of trust free and clear of prior encumbrances.  As indicated in the Deed of Trust, Epice has the right to protect its lien priority in the Property by paying special taxes and adding the amounts paid as additional principal secured by the Deed of Trust.  The significance of the imposition of a lien with priority over the Deed of Trust is shown by the facts in this case, as Epice's interest in the Property was extinguished and completely nullified through a foreclosure of the special tax bill.  If Epice had been given notice of the bill during the 90 days of required collection efforts under the Weed Control Ordinance or thereafter, Epice could have retained its interest as a holder of a deed of trust free and clear of the special tax bill by paying same or by successfully contesting whether the "light debris" or the Fence on the Property was a nuisance or by declaring a default in the covenants of the Deed of Trust for failure to maintain the Property or failure to pay taxes and foreclosing its Deed of Trust.

**Balancing of Factors in Determining What Process is Due—Is There is Substantial Risk of Governmental Error and What is the Probable Value of Additional Due Process Safeguards?  Answers:  Yes; Requiring Collection Efforts to be Directed to Mortgagees Before Foreclosing Their Interest Will Probably Result**

**in Payment of Special Tax Bills Without the Cost of Foreclosing the Special Tax Lien:**  The Court in the *Luedeke* case also noted that there is a substantial risk of governmental error in light of the ambiguity of the meaning of the word "abut" in the Village ordinance, the fact that the Village did not review deeds and property lines prior to fining residents for noncompliance, and the fact that the determination to impose the lien is based upon a one-sided view of the facts and law, as the government has a direct pecuniary interest in the outcome of the proceeding.  63 F.Supp.2d at 221.  The Court found the value of additional safeguards unquestionable.  63 F.Supp.2d at 221.

In this case, there is substantial risk of governmental error in determining that "light debris" or a fence was a nuisance, in light of the ambiguity of the meaning of the word "nuisance" in the Weed Control Ordinance or other ordinances of the City, the fact that the Property was fully fenced (thereby presumably preventing third parties from dumping trash on the Property), and the fact that the Property is fully paved and has little, if any, areas of vegetation where weeds can grow.  Also in this case, the City has a direct pecuniary interest in the outcome of the nuisance proceeding, as the whole purpose of the issuance of a special tax bill is to allow the City to recover costs it has incurred.

If the Forestry Commissioner had attempted to collect the abatement bill for at least the full 90-day period required by the Weed Control Ordinance or had attempted to collect this abatement bill from Epice, as mortgagee, Epice could have exercised its right to protect its title under the Deed of Trust by paying said abatement bill and adding that cost to the principal amount secured by the Deed of Trust or by successfully contesting the existence of a "nuisance" on the Property, or by declaring a default in the covenants of the Deed of Trust for failure to maintain the Property or for failure to pay taxes and

foreclosing its Deed of Trust.  By not receiving notice of said abatement bill before that bill was certified as a special tax bill with lien priority over the Deed of Trust in favor of Epice and by not receiving notice of the special tax bill after said certification of costs, Epice was not able to retain ownership of the Deed of Trust free and clear of prior encumbrances.

Requiring the abatement bill to be mailed to mortgage holders before the Commissioner can determine that he cannot collect the abatement bill as a precondition to certification of the costs of the abatement for a special tax bill is an additional safeguard that in many cases will result in abatement bills being paid by the lien holder to protect the priority of their lien encumbering the property.  This additional safeguard will also sometimes result in the City being paid the amount of the abatement bill, thus eliminating the need to incur the costs of foreclosing a special tax bill.  The value of that safeguard is unquestionable, and the cost of implementing this additional safeguard is minimal in light of the fact that implementation of this additional safeguard will many times result in payment of the special tax bill by the mortgagee and save the City the cost of foreclosing a special tax bill.  Further, this requirement is already in the Weed Control Ordinance, because that ordinance requires the Forestry Commissioner to certify that he is not able to collect these abatement bills after attempting to collect the abatement bill for at least 90 days before certification as a special tax bill.  How can the Forestry Commissioner certify that he cannot collect an abatement bill if no one has attempted to collect the bill from the mortgagee?

**Balancing of Factors in Determining What Process is Due—What is the Significance of the Government's Interest?  In this case, the Government has No**

**Significant Interest in Depriving Epice of its Property Interest When Other Alternative Collection Methods Exist that Would Collect this Debt:** The Court in *Luedeke* case found the Village's interest to be relatively insignificant, as the Court found that the Village could remove the snow and ice and then institute procedures to determine who is liable for the costs of such removal after the snow and ice is removed without arbitrarily issuing fines. 63 F.Supp.2d at 221. That is, there was an alternative method of achieving the government's objective that did not involve the deprivation of private property interests.

The City has a legitimate interest in collecting the cost of abating a nuisance. The City and LRA do not have a legitimate interest in taking private property through the tax sale foreclosure process when alternative methods of collection exist that do not involve the deprivation of private property interests. Here the practice of the Forestry Commissioner is to rubber-stamp the certification of costs without determining the actual costs of the abatement work. Here the practice is for the City to certify costs for a special tax bill prior to attempting to collect said bills from mortgagees. Here the practice was for the City to rush for the issuance of a special tax bill against the Property without attempting to collect the bill for at least 90 days as required by the Weed Control Ordinance.

Requiring the City to attempt to collect abatement costs from a mortgagee as an additional due process safeguard and an alternative method of collection only benefits the City by allowing collection of abatement costs from mortgagees as well as owners. The City has no legitimate interest in foreclosing tax liens if alternative methods of collection of the debt are available.

## III.

## ASSUMING ARGUENDO THAT LRA MAILED PLAINTIFF NOTICE OF THE TAX SALE CONFIRMATION HEARING HELD UNDER SECTION 92.840, RSMo, PLAINTIFF'S TAX SALE REDEMPTION RIGHTS HAD ALREADY EXPIRED.

Section 92.750, RSMo, provides:

> 1.    Any person having any right, title or interest in, or lien upon, any parcel of real estate described in such petition may redeem such parcel of real estate by paying to the collector all of the sums mentioned therein, including principal, interest, penalties, attorney's fees and costs then due, at any time prior to the time of the foreclosure sale of such real estate by the sheriff.

> 2.    In the event of failure to redeem prior to the time of the foreclosure sale by the sheriff, such person shall be barred and forever foreclosed of all his right, title and interest in and to the parcels of real estate described in such petition.

> 3.    Upon redemption, as permitted by this section, the person redeeming shall be entitled to a certificate of redemption from the collector describing the property in the same manner as it is described in such petition, and the collector shall thereupon note on his records the word "redeemed" and the date of such payment opposite the description of such parcel of real estate.

Section 92.840, RSMo, provides, in part:

> 1.    After the sheriff sells any parcel of real estate, the court shall, upon its own motion or upon motion of any interested party, set the cause down for hearing to confirm the foreclosure sale of the real estate, even though such parcels are not all of the parcels of real estate described in the notice of sheriff's foreclosure sale. Notice of the hearing shall be sent by any interested party, or the court, moving to confirm the foreclosure sale, to each person who received notice of sale as specified in subsection 3 of section 92.810. At the time of such hearing, the sheriff shall make report of the sale, and the court shall hear evidence of the value of the property offered on behalf of any interested party to the suit, and shall immediately determine whether

13

an adequate consideration has been paid for each such parcel.

2.      For this purpose, the court shall have power to summon any city official or any private person to testify as to the reasonable value of the property, and if the court finds that adequate consideration has been paid, he shall confirm the sale and order the sheriff to issue a deed with restriction as provided herein to the purchaser subject to the application of an occupancy permit for all parcels as provided in subsection 5 of this section. If the court finds that the consideration paid is inadequate, the purchaser may increase his bid to such amount as the court may deem to be adequate, whereupon the court may confirm the sale. If, however, the purchaser declines to increase his bid and make such additional payment, then the sale shall be disapproved, the lien of the judgment continued, and such parcel of real estate shall be again advertised and offered for sale by the sheriff to the highest bidder at public auction for cash at any subsequent sheriff's foreclosure sale.

3.      If the sale is confirmed, the court shall order the proceeds of the sale applied in the following order:

> (1) To the payment of the costs of the publication of the notice of foreclosure and of the sheriff's foreclosure sale;
> (2) To the payment of all costs including appraiser's fee and attorney's fees;
> (3) To the payment of all tax bills adjudged to be due in the order of their priority, including principal, interest and penalties thereon. If, after such payment, there is any sum remaining of the proceeds of the sheriff's foreclosure sale, the court shall thereupon try and determine the other issues in the suit in accordance with section 92.775. If any answering parties have specially appealed as provided in section 92.845, the court shall retain the custody of such funds pending disposition of such appeal, and upon disposition of such appeal shall make such distribution. If there are not sufficient proceeds of the sale to pay all claims in any class described, the court shall order the same to be paid pro rata in accordance with the priorities.

> 4.    If there are any funds remaining of the proceeds after the sheriff's sale and after the distribution of such funds as set out in this section and no person entitled to any such funds, whether or not a party to the suit, shall, within two years after such sale, appear and claim the funds, they shall be distributed to the appropriate taxing authorities.

The right of Plaintiff to redeem its interest in the subject real estate expired at the time of the Sheriff's sale.  Section 92.750, RSMo.  The confirmation hearing is concerned with the adequacy of the bid received at the Sheriff's sale and the distribution of sales proceeds.  Section 92.840, RSMo.  Any notice of the confirmation hearing mailed to Plaintiff after its right of redemption had expired would not comport with principles of due process.

## IV.

## GENERIC STATEMENTS OF MAILING OF NOTICES OF TAX SALE REDEMPTION ARE INSUFFICIENT EVIDENCE OF COMPLIANCE WITH CONSTITUTIONAL DUE PROCESS OBLIGATIONS.

In essence, Plaintiff believes that there is insufficient substantiation of what, if anything, was actually mailed to Plaintiff.

In *Jones v. Flowers,* 547 U.S. ____, 126 S. Ct. 1708 (2006), the Court stated:

The Solicitor General argues that requiring further effort when the government learns that notice was not delivered will cause the government to favor modes of providing notice that do not generate additional information—for example, starting (and stopping) with regular mail instead of certified mail. **We find this unlikely, as we have no doubt that the government repeatedly finds itself being asked to prove that notice was sent and received.** Using certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received. That added security, however, comes at a price—the State also learns when notice has *not* been received. We conclude that, under the circumstances presented, the State cannot simply ignore that information in proceeding to take and sell the owner's property—any more than it could ignore the information that the owner in *Robinson* was in jail, or that the owner in *Covey* was incompetent.

547 U.S. at _____ (Emphasis added.)

In this case, the Collector started and stopped with notice of tax sale redemption rights being sent via regular U.S. mail. As indicated above, there is no evidence presented identifying who supposedly prepared the tax sale notice of redemption rights to Epice Corporation, the actual contents of that tax sale notice purportedly sent to Epice Corporation, the person who actually placed the tax sale notice in an envelope, the identity of the person who addressed the envelope to Epice Corporation, or the identity of the person who deposited said envelope in the mail.

## V.

## DUE PROCESS REQUIRES THE COLLECTOR OR SHERIFF IN MAILING NOTICES OF TAX SALE REDEMPTION RIGHTS TO "WATCH THE POSTMAN" BY IMPLEMENTING PROCEDURES TO TRACK WHETHER TAX SALE REDEMPTION NOTICES ARE RECEIVED.

In *Nelson v. City of New York,* 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956), notice of tax sale proceedings were mailed to a property owner who did not receive them. The Court held that due process was satisfied when a tax sale redemption notice was mailed to the correct address, even though the property owner did not receive actual notice. In that case, there was the suggestion that the property owner's bookkeeper concealed notices and water bills from the property owner. In *Nelson* there was no dispute as to whether the tax sale redemption notices were actually mailed, as those notices were introduced into evidence at trial.

The question is whether *Jones v. Flowers,* 547 U.S. ____, 126 S. Ct. 1708 (2006) has in effect changed or overruled the holding in *Nelson* that notices of tax sale redemption rights mailed by regular mail to the correct address satisfies due process. In *Jones,* the Court stated:

We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed. If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, **and then watched** as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one "desirous of actually informing" the owners would simply shrug his shoulders as the letters disappeared and say "I tried." Failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman.

547 U.S. at _____ (emphasis added).

Epice believes that *Jones* stands for the proposition that the government now has a duty to "watch the postman" by implementing procedures to track whether notices of tax sale redemption rights mailed were received. Both the Collector and the Sheriff have not implemented any procedures to track whether notices of tax sale redemption rights are received. Epice is unaware of any method when regular U.S. mail is used to track whether the mail is actually received. Registered or certified mail gives the sender the ability to track whether the addressee actually receives the notice. It is Epice's position that the Collector and the Sheriff have not used any method of tracking whether the notice is received, such as certified mail, and therefore, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the notice sent by the Collector to Epice was constitutionally deficient. How could notice be reasonably calculated to reach the intended recipient if no one tracks whether the notice is in fact received, or, using the language of *Jones*, if no one watches the postman?

In addition, Section 92.760, RSMo, provides:

1.    The collector shall also cause to be prepared and mailed in an envelope with postage prepaid, within thirty days after the filing of such petition, a brief notice of the filing of the suit, to the persons named in the petition as being the owners, according to the records of the assessor for the respective parcels of real estate described in the petition. The notices shall be sent to the addresses of such persons upon the records of the

assessor, and in the event that any name or address does not appear on the records of the assessor, with respect to any parcel of real estate, the collector shall so state in an affidavit, giving the serial number of each parcel of real estate affected. Such affidavit shall be filed in the suit with the circuit clerk not later than sixty days after the date of the first publication of the notice of foreclosure. **The failure of the collector to mail the notice as provided in this section shall invalidate any proceedings brought pursuant to the provisions of sections 92.700 to 92.920.** The failure of the collector to file the affidavit as provided in this section shall not affect the validity of any proceedings brought pursuant to the provisions of sections 92.700 to 92.920.

    2. Such notice shall be substantially as follows:

To the person to whom this notice is addressed: According to the records in the assessor's office, you are the record owner as to one or more parcels of real estate described in a certain petition bearing cause* No. ........ (fill in number of case) filed in the Circuit Court of ...., Missouri, at .... (fill in city), on ...., 20..., wherein a foreclosure of the lien of various delinquent tax bills is sought and a court order asked for the purpose of selling such real estate at a public sale for payment of all delinquent tax bills, together with interest, penalties, attorney's fees and costs. Publication of notice of such foreclosure was commenced on the ... day of ...., 20..., in .... (here insert name of city), Missouri.

THE COLLECTOR OF THE CITY OF ............................ (Insert name of city) HAS FILED A LAWSUIT AGAINST YOUR PROPERTY. THE LAWSUIT SAYS THAT YOU ARE BEHIND ON YOUR PROPERTY TAXES. YOU COULD LOSE YOUR PROPERTY IF YOU DON'T DO ANYTHING ABOUT THIS.

YOU HAVE A RIGHT TO ENTER INTO AN AGREEMENT WITH THE COLLECTOR TO BRING YOUR TAXES UP TO DATE. YOU MAY CONTACT THE COLLECTOR BY CALLING .......................... (Insert telephone number of collector). IF YOU DO NOT UNDERSTAND THIS NOTICE, OR YOU DO NOT KNOW WHAT TO DO, YOU MAY CALL THIS OFFICE FOR FURTHER EXPLANATION OR SEE A LAWYER RIGHT AWAY.

Unless all delinquent taxes be paid upon the parcels of real estate described in such petition and such real estate redeemed prior to the time of the foreclosure sale of such real estate by the sheriff, the owner or any person claiming any right, title or interest in or to, or lien upon, any such parcels of real estate shall be forever barred and foreclosed of all right, title and interest and equity of redemption in and to such parcels of real estate; except that any such persons shall have the right to file an answer in said suit on or before the ... day of ..., 20..., in the office of the Circuit Clerk and a copy thereof to the Collector, setting forth in detail the nature and amount of the interest and any defense or objection to the foreclosure. Dated ........

(Emphasis added.)

In this case, the only evidence of the actual notices being mailed to C.W. Turner Corporation (the 2002 Real Estate Tax Bill issued by the Collector of Revenue) is to the address of 5601 West Sahara, Suite L, Las Vegas, Nevada 89102. Nowhere is there any copy of any notice being sent to C. W. Turner Corporation at 4601 West Sahara, Suite L, Las Vegas, Nevada 89102 by the Collector of Revenue. The failure to provide the owner notice of the tax sale proceedings is sufficient to invalidate these tax sale proceedings with respect to the subject real estate under Section 92.760, RSMo, and is a sufficient basis for quieting the title to the subject property in the Plaintiff.

## VI.

## SECTION 351.574, RSMO, DOES NOT PRECLUDE THIS ACTION OR INVALIDATE THE DEED OF TRUST.

Section 351.572, RSMo, provides:

> 1. A foreign corporation may not transact business in this state until it obtains a certificate of authority from the secretary of state.

> 2. The following activities, among others, do not constitute transacting business within the meaning of subsection 1 of this section:

> (1) Maintaining, defending, or settling any proceeding;

> (2) Holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs;

> (3) Maintaining bank accounts;

> (4) Maintaining offices or agencies for the transfer, exchange, and registration of the corporation's own securities or maintaining trustees or depositories with respect to those securities;

> (5) Creating or acquiring indebtedness, mortgages, and security interests in real or personal property;

(6) Securing or collecting debts or enforcing mortgages and security interests in property securing the debts;

(7) Conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature;

(8) Transacting business in interstate commerce.

3. The list of activities in subsection 2 of this section is not exhaustive.

Plaintiff's actions in prosecuting this action is exempt from Section 351.572, RSMo, under Subdivision (1) of Subsection 2 thereof. *See Ozark Employment Specialists, Inc. v. Beeman,* 80 S.W.3d 882, 890 (Mo. App., W.D. 2002).

Plaintiff's actions in creating the Deed of Trust foreclosed is exempt from Section 351.572, RSMo, under Subdivisions (5) and (6) of Subsection 2 thereof. *Broadway Bond St. Co. v. Fidelity Printing Co.,* 170 S.W. 394 (Mo. App., KC 1914) (providing that a foreign corporation could hold title to real estate as part of a foreclosure process).

Further, Plaintiff's action involve the transaction of business in interstate commerce within the meaning of Subdivision (8) of Subsection 2 of Section 351.572, RSMo.

Assuming *arguendo* that Plaintiff is incorrect and its actions violate Section 351.572, RSMo, such action does not void the Deed of Trust.

Section 351.574, RSMo, provides:

1. A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.

2. The successor to a foreign corporation that transacted business in this state without a certificate of authority and the assignee of a cause of action rising out of

20

that business may not maintain a proceeding based on that cause of action in any court in this state until the foreign corporation or its successor obtains a certificate of authority.

3. A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.

4. Every foreign corporation now doing business in or which may hereafter do business in this state without a certificate of authority shall be subject to a fine of not less than one thousand dollars to be recovered before any court of competent jurisdiction; and it is hereby made the duty of the secretary of state immediately after August first, of each year, and as often thereafter as he may be advised that corporations are doing business in contravention of sections 351.572 to 351.604, to report the fact to the prosecuting attorney of any city or county in which the corporation is doing business, and the prosecuting attorney shall, as soon thereafter as is practicable, institute proceedings to recover the fine herein provided for, which shall go into the school moneys fund as provided by law; in addition to which penalty, no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or* tort, while the requirements of sections 351.572 to 351.604 have not been complied with.

5. Notwithstanding subsections 1 and 2 of this section, the failure of a foreign corporation to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this state.

Subsection 1 of Section 351.574, RSMo, does not apply to this action, as such statute only prohibits the filing of an action in the Missouri courts, not this court.

Subsection 4 of Section 351.574, RSMo, provides that subsections 1 and 2 of that statute does not impair the validity of its corporate acts.  Nothing in Section 351.374, RSMo, would invalidate the Deed of Trust in favor of Epice Corporation.

Respectfully submitted,

GEBHARDT REAL ESTATE AND
LEGAL SERVICES, L.L.C.


By:   _____
/s/Phillip K. Gebhardt  Mo. Bar #29569
U.S.D.C., E.D. of Mo. # 61304
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
E-mail at pkgmag@swbell.net
Co-counsel for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served in accordance with this Court's electronic filing procedures on the 20th day of October 2009 to:  Anthony Sestric, Special Assistant Circuit Attorney, Attorney for Defendants Collector and James W. Murphy, Sheriff of the City of St. Louis, Donald C. Dylewski, Attorney for Defendants City of St. Louis and the Land Reutilization Authority of the City of St. Louis, Robert M. Hibbs, Attorney for Defendants City of St. Louis and the Land Reutilization Authority of the City of St. Louis, Daniel J. Proost, Attorney for Defendants Collector and Sheriff, James A. Michael, Jr., Attorney for Defendants Collector and Sheriff, and Matthew C. Casey, co-counsel for Plaintiff.


_____


Copy to Epice Corporation
F:\Shared Data\Law Clients\Epice Corporation\Litigation\Trial Brief2
File No. 06-386-L-5230
pkg

22